IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JANET RENEE JONES, | ) CASE NO. 5:23-CV-00989-PAG |
| Plaintiff, | ) |
| | ) U.S. DISTRICT JUDGE |
| v. | ) PATRICIA A. GAUGHAN |
| | ) |
| | ) U.S. MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) JENNIFER DOWDELL ARMSTRONG |
| | ) |
| Defendant, | ) **REPORT AND RECOMMENDATION** |
| | ) |

**I.     INTRODUCTION**

Plaintiff, Janet Renee Jones ("Ms. Jones"), seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB"). (ECF No. 1.) U.S. District Judge Patricia A. Gaughan has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). Pursuant to Local Civil Rule 72.2, this matter was referred to me for preparation of a Report and Recommendation. For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's final decision.

**II.    PROCEDURAL HISTORY**

Ms. Jones filed an application for DIB on April 15, 2014, alleging a disability onset date of December 30, 2013. (Tr. 141-47.)[1] Her application was related to arthritis, high blood pressure, diabetes, sleep apnea, and a "heart condition." (Tr. 170.) Her application was denied initially and upon reconsideration. (Tr. 75-87, 96-102.) An administrative law judge ("ALJ") held a hearing on July 19, 2016. (Tr. 38-63.) Ms. Jones, represented by counsel, and a vocational expert ("VE")

---

[1] The administrative transcript ("Tr.") appears at ECF No. 5 on CM/ECF.

1

testified. (*Id.*) The ALJ issued a written decision on August 9, 2016, finding Ms. Jones was not disabled within the meaning of the Social Security Act. (Tr. 26-32.) The ALJ's decision became final on March 3, 2017, when the Appeals Council declined further review. (Tr. 7-24.) Ms. Jones sought judicial review of this decision in the U.S. District Court for the Northern District of Ohio. She also filed a subsequent application for DIB benefits, which was awarded with a disability onset date of January 1, 2017. (Tr. 557.) On September 12, 2018, the U.S. District Court for the Northern District of Ohio remanded Ms. Jones' case for further proceedings. *Jones v. Comm'r of Soc. Sec. Admin.*, No. 5:17CV1442, 2018 WL 4354963 (N.D. Ohio Sept. 12, 2018). The court directed the ALJ to consider the period prior to Ms. Jones' award of benefits on her subsequent application—from August 1, 2015 to December 31, 2016. *Id.*

An ALJ held a second hearing on September 10, 2019, where Ms. Jones, represented by counsel, and a VE testified. (Tr. 630-52.) The ALJ issued a written decision on September 27, 2019, finding Ms. Jones was not disabled within the meaning of the Social Security Act. (Tr. 696-712.) Ms. Jones requested review from the Appeals Council. (Tr. 713-17.) On July 18, 2020, the Appeals Council remanded this matter to the ALJ to specifically re-evaluate the treating source opinion of Atul Goswami, M.D. and its effect on Ms. Jones' residual functional capacity (Tr. 715-17.) The Appeals Council affirmed Ms. Jones' subsequently filed application finding her disabled as of January 1, 2017, and found that the period prior to January 1, 2017, required further adjudication. (Tr. 713-17.)

An ALJ held a third hearing on October 30, 2020. (Tr. 576-629.) The ALJ issued a written decision on May 4, 2021, finding that Ms. Jones was not disabled within the meaning of the Social Security Act from August 1, 2015, the amended disability onset date, through December 31, 2016.

2

(Tr. 557-69.) The ALJ's decision became final on March 10, 2023, when the Appeals Council declined further review. (Tr. 543-45.)

On May 2, 2023, Ms. Jones filed her Complaint, challenging the Commissioner's final decision related to her original application on April 17, 2014, and the period between August 1, 2015, through December 31, 2016. (ECF No. 1.) Ms. Jones asserts a single assignment of error:

(1) Whether the administrative law judge erred in failing to evaluate the opinion of Plaintiff's treating physician.

(ECF No. 6, PageID#1051.)

### III. BACKGROUND INFORMATION

#### A. Personal, Educational, and Vocational Experience

Ms. Jones was born in 1958. (Tr. 204.) She has four children. (Tr. 384.) She completed two years of technical school. (*Id.*) Her relevant past work was employment as a customer service agent and customer service clerk. (Tr. 567-68.)

#### B. Relevant Non-Medical/Medical Opinion Evidence

##### 1. *State Agency Opinions*

On July 23, 2014, Lynne Torello, M.D., reviewed Ms. Jones' medical record at the initial level of consideration. (Tr. 71.) Dr. Torello opined that Ms. Jones could perform work at the medium exertional level. (*See id.*) Dr. Torello opined that Ms. Jones could occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; and stand and/or walk for a total of six hours in an eight-hour workday. (*Id.*)

Maria Congbalay, M.D., reviewed the medical record at the reconsideration level on January 6, 2015. Dr. Congbalay opined that Ms. Jones could perform work at the light exertional level. (*See* Tr. 83.) Additionally, Dr. Congbalay opined that Ms. Jones could occasionally lift and/or carry 20 pounds; could frequently lift and/or carry 10 pounds; could stand and/or walk with

3

normal breaks for about six hours in an eight-hour workday; could occasionally climb ladders, ropes, or scaffolds; could frequently reach overhead with her right arm; and should avoid concentrated exposure to hazards such as machinery and heights. (Tr. 83-85.)

### 2. *Morgan Koepke, M.D.*

Dr. Koepke saw Ms. Jones for a consultative examination on December 9, 2014. Ms. Jones reported she had diabetes mellitus, Schatzki's ring of the esophagus, and osteoarthritis of the neck. (Tr. 383.) She reported taking oral medications for her diabetes mellitus, with her blood sugar readings registering between 98 and 150. (*Id.*) She stated that severe arthritis in her neck caused pain in her right upper extremity "at all times." (*Id.*) Regarding Ms. Jones' activities of daily living, Ms. Jones reported that she could drive a car, navigate stairs without difficulty, and did not use an assistive device. (Tr. 384.) She also could bathe, cook, clean, and dress herself. (*Id.*)

Upon examination, Ms. Jones weighed 216 pounds with a BMI of 36. (*Id.*) Examination of her back and neck showed that it was nontender to palpation without spinal step off or paraspinal spasms. (Tr. 385.) Ms. Jones did have a "buffalo hump," but had full intact range of motion in her cervical and dorsolumbar spine. (*Id.*) Straight leg raising was negative. (*Id.*) Ms. Jones had impaired (4/5) strength in her right arm and limited active range in her right shoulder, but her examination was otherwise normal in her upper extremities, including grasp, manipulation, pinch, and fine coordination. (Tr. 385, 388.) She had no evidence of pitting edema or vascular insufficiency. (Tr. 385.) Her gait was normal, except for pain while walking on her toes. (*Id.*)

Dr. Koepke diagnosed Ms. Jones with diabetes mellitus, Shatzki's ring with alleged dysphasia, osteoarthritis of the neck, obesity, obstructive sleep apnea, and a history of supraventricular tachycardia. (Tr. 385, 387.) Dr. Koepke opined that Ms. Jones could participate in "moderate work duties," including standing for six hours during a normal workday and lifting

4

20 to 30 pounds on a regular basis, though her lifting would be limited secondary to some mild right upper extremity weakness noted on her examination. (Tr. 387.) Dr. Koepke further opined that Ms. Jones should avoid using her right arm overhead more than occasionally. (*Id.*)

### 3. *Atul Goswami, M.D.*

Dr. Goswami completed a Physical Residual Functional Capacity form on April 21, 2015. (Tr. 403-04.) Dr. Goswami opined that Ms. Jones could lift or carry less than ten pounds frequently and occasionally; stand and walk about two hours; and sit about two hours in an eight-hour workday. (Tr. 403.) Dr. Goswami further opined that Ms. Jones would have to alternate between sitting, standing, or walking every 15 minutes, and could only stand for 15 minutes at a time. (*Id.*) Dr. Goswami also opined that Ms. Jones would need the opportunity to shift positions at will from sitting and standing/walking and would need to lie down at unpredictable intervals due to chronic pain in lower back and dizzy spells. (*Id.*) Dr. Goswami said Ms. Jones could reach, handle, finger, and push and pull less than occasionally, and could occasionally feel due to rheumatoid arthritis, peripheral neuropathy, diabetes mellitus, and hypertension. (Tr. 404.) Finally, Dr. Goswami opined that Ms. Jones would be absent from work two to three times per month. (*Id.*)

### C. Relevant Medical Evidence

On August 18, 2015, Ms. Jones first met with Dr. Goswami. At this appointment, Ms. Jones reported pain and swelling in her right knee and nausea while eating. (Tr. 463.) Dr. Goswami observed that Ms. Jones had swelling, popping, and tenderness to palpation in her knee. (*Id.*) Ms. Jones continued to see Dr. Goswami monthly for complaints of pain in her knee, the right side of her neck, and her low back. (Tr. 458-62.) X-ray imaging of Ms. Jones' right knee from September 8, 2015, revealed mild degenerative changes. (Tr. 480.)

5

On October 29, 2015, Ms. Jones saw Dr. Goswami for a regular check-up appointment. She was noted to have low back pain without radiculopathy, but she denied numbness or tingling in her arms or legs. (Tr. 461.) Dr. Goswami declined to send Ms. Jones for the nerve conduction study and electromyography (EMG) that she had requested because her pain was localized in her right knee. (*Id.*) Dr. Goswami administered Kenalog in Ms. Jones' right knee and left knee. (*Id.*) Regarding Ms. Jones' complaints of peripheral neuropathy, she received orthotics. (*Id.*)

An MRI of Ms. Jones' cervical spine on November 4, 2015, revealed advanced degenerative changes at the C5 and C6-C7 with marked disc space loss and prominent marginal osteophytes. (Tr. 478.) The MRI indicated significant neural foraminal stenosis on the right side at C5-6 and to a lesser degree at C6-7 with prominent osteophytes at the uncovertebral joints and hypertrophic fact changes. (*Id.*) On the left side, there was moderate neural foraminal stenosis at C5-6 due to osteophytes at the uncovertebral joints and adjacent facet joint. (*Id.*)

Between April 4 and May 4, 2016, Ms. Jones underwent physical therapy for cervicalgia of her spine. Her treatment included flexibility training, daily education, and cryotherapy. (Tr. 501, 505.) On April 4, 2016, Ms. Jones reported her physical therapist observed Ms. Jones had reduced range of motion in her neck and back but no loss of sensation. (Tr. 494.) She had pain with range of motion of the cervical spine, pain in her right shoulder, and no remarkable loss of sensation in her upper extremities. (Tr. 493-94.)

Ms. Jones returned for a physical therapy appointment on April 12, 2016. (Tr. 504.) She had reduced range of motion in her neck and back and slightly reduced strength (-5/5) in her arms, but the examination did not indicate any loss of sensation. (Tr. 504.) Ms. Jones reported decreased pain in her cervical spine and no radicular pain into her right shoulder. (Tr. 505.) Due to Ms. Jones' reports of high pain, the physical therapist held back on some exercises. (*Id.*)

On April 18, 2016, Ms. Jones reported to her physical therapist that she got about six hours of pain relief from her last treatment session, but then symptoms returned. (Tr. 509.) She indicated that she was experiencing right shoulder and cervical pain that morning. (*Id.*) Her physical therapist observed decreased range of motion in cervical spine and back but did not observe any loss of sensation. (Tr. 510.) She reported pain in her neck and shoulder. (*Id.*)

On April 25, 2016, Ms. Jones reported at her physical therapy appointment that she had "a lot of pain" in her right knee over the weekend and 5/10 pain in her neck the day of her appointment. (Tr. 515.) She denied any numbness or tingling in her upper extremities at the appointment or over the weekend. (*Id.*) She performed her home exercise program over the weekend and said that she has pain while performing her exercises. (*Id.*) She reported that she did feel that her shoulders "are feeling better and a little stronger." (*Id.*) Her physical therapist observed Ms. Jones had limited range of motion in her cervical spine and slightly reduced strength in her arms, but she did not have any loss of sensation. (Tr. 516.) At an April 27, 2016, appointment, Ms. Jones reported that her cervical pain level decreased from her previous appointment. (Tr. 518.)

On May 2, 2016, Ms. Jones attended another physical therapy appointment. She reported having pain in her right neck and shoulder "in deep structures." (Tr. 521.) She stated that she had been paying closer attention to her posture. (*Id.*) Her physical therapist observed Ms. Jones had limited range of motion in her spine and slightly reduced strength in her arms, but she did not have any loss of sensation. (Tr. 522.) She reported pain in her neck and right shoulder. (*Id.*)

On May 4, 2016, Ms. Jones was discharged from physical therapy because she felt like she was getting worse. (Tr. 535.) She reported that she had pain that was a 10/10. (*Id.*) Her physical therapist reported that Ms. Jones had limited range of motion in her spine and slightly reduced strength in her arms, but she did not have any loss of sensation. (Tr. 525.) She also reported pain

7

in her neck and right shoulder. (*Id.*) She met some goals and made some progress in others, but continued to be limited by pain, decreased flexibility, range of motion, endurance, and postural awareness. (Tr. 526.) However, further physical therapy was not indicated. (*Id.*)

On June 30, 2016, Ms. Jones reported to the emergency room with knee pain after a fall in her bathroom. (Tr. 537.) Providers noticed minimal swelling in Ms. Jones' knee, but examination showed no edema. (Tr. 538.) Examination revealed no costovertebral angle tenderness. (*Id.*) She also had no laxity of the ligaments. (*Id.*) Ms. Jones performed straight leg testing which was negative, and she had no sensory or motor limitations. (*Id.*) She had no change in gait. (*Id.*) Based on the examination with no bony tenderness, the providers did not perform any imaging studies and diagnosed Ms. Jones with a right knee strain. (*Id.*)

On November 27, 2016, Ms. Jones returned to the emergency room with complaints of chronic right knee pain. (Tr. 958.) She reported taking Percocet and Meloxicam with minimal relief. (*Id.*) Examination showed normal range of motion in her neck. (Tr. 959.) Ms. Jones' right knee showed pain with active range of motion and with passive range of motion. (*Id.*) She also had tenderness in the right medial side of her knee. (*Id.*) However, her examination also revealed normal motor strength, intact sensation, and negative ligament laxity testing. (*Id.*) Ms. Jones' x-rays revealed mild arthritis. (Tr. 960.) Despite this, the provider observed that Ms. Jones retained a steady gait and that her upper extremity examination was normal. (Tr. 959.)

## IV. THE ALJ'S DECISION

The ALJ's first determined that Ms. Jones last met the insured status requirements of the Social Security Act on December 31, 2020. (Tr. 560.) The ALJ then determined that Ms. Jones did not engage in substantial gainful activity from August 1, 2015, through December 31, 2016. (Tr. 560.) The ALJ next determined that Ms. Jones had the following severe impairments from August

8

1, 2015, through December 31, 2016: degenerative disc disease of the cervical spine, osteoarthritis of the right shoulder, osteoarthritis of the right knee, diabetes mellitus with peripheral neuropathy, obstructive sleep apnea, and obesity. (*Id.*) However, the ALJ determined that none of these impairments—individually or in combination—met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 561.)

The ALJ determined that Ms. Jones had the residual functional capacity to perform work at the sedentary exertional level, except she must be permitted to alternate to a standing position for a brief period of up to 5 minutes at intervals of 60 minutes or longer; can occasionally reach overhead; can frequently push, pull, handle, or reach in other directions with her right upper extremity; can occasionally operate foot controls with her bilateral lower extremities; can occasionally climb ramps or stairs; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, or crawl; and must avoid all exposure to workplace hazards such as unprotected heights and moving mechanical parts. (Tr. 561-67.) The ALJ further determined that Ms. Jones was capable of performing her past relevant work as a customer service agent and customer service clerk from August 1, 2015, through December 31, 2016. (Tr. 567-68.) The ALJ determined that this work did not require the performance of work-related activities precluded by Ms. Jones' residual functional capacity. (*Id.*) Accordingly, the ALJ concluded that Ms. Jones was not disabled within the meaning of the Social Security Act from August 1, 2015, through December 31, 2016. (Tr. 568.)

V.   **LAW AND ANALYSIS**

   A. **Standard of Review**

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r*

*of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip*, 25 F.3d at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059-60 (6th Cir. 1983).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp.

10

2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original)).

## B. Standard for Disability

The Social Security regulations outline a five-step sequential evaluation process that the ALJ must use in determining whether a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id*.

## C. Substantial Evidence Supports the Weight the ALJ Assigned to Dr. Goswami's Opinion.

Ms. Jones argues that substantial evidence does not support the ALJ's decision to not assign controlling weight to the opinion of Ms. Jones' treating doctor, Dr. Goswami. For the following reasons, this argument lacks merit. Because Ms. Jones' application was filed before March 27,

11

2017, the treating physician rule applied to the evaluation of Dr. Goswami's opinion.[2] The treating physician rule requires that "[a]n ALJ [] give the opinion of a treating source controlling weight if her finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)(7)) (internal quotation marks omitted).

Even if the ALJ does not give the opinion controlling weight, the opinion is still entitled to significant deference or weight which takes into account the length and frequency of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and whether the treating physician is a specialist. 20 C.F.R. § 416.927(c)(2)(6). The ALJ is not required to explain how she considered each of these factors but must provide "good reasons" for discounting a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); *see also Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011) ("In addition to balancing the factors to determine what weight to give a treating source opinion [when controlling weight has been denied,] the agency specifically requires the ALJ to give good reasons for the weight actually assigned."). "These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9, at *12, 1996 WL 374188, at *5 (July 2, 1996)) (internal quotation marks omitted).

A failure to follow these procedural requirements "denotes a lack of substantial evidence, even whe[n] the conclusion of the ALJ may be justified based on the record." *Rogers v. Comm'r*

---

[2] The regulations for handling treating source evidence have been revised for claims filed after March 27, 2017. *See* 20 C.F.R. § 416.927.

*of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). The Sixth Circuit Court of Appeals "do[es] not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and [it] will continue remanding when [it] encounter[s] opinions from ALJs that do not comprehensively set forth reasons for the weight assigned." *Cole*, 661 F.3d at 939 (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)) (alteration in original) (internal quotation marks omitted).

The ALJ acknowledged that Ms. Jones "had a treating relationship with Dr. Goswami which lasted through the entire relevant period." (Tr. 566.) However, the ALJ explained that there was insufficient medical evidence to support substantive parts of Dr. Goswami's medical opinions. (*Id.*) The ALJ provided the following reasoning:

> [T]his opinion is not fully supported by the medical evidence of record. The opinion that the claimant was limited to the sedentary exertional level is consistent with the record and is supported by the imaging studies, physical examination findings which showed degenerative changes in the cervical spine, right knee, and right shoulder (2F/14- 15; 13F; and 20F/13, 18). It is also consistent with the claimant's physical examination findings, which showed pain with active range of motion and passive range of motion of the right knee. However, the limitations regarding standing and walking, the need for frequent changes of position, and a need to lie down at unpredictable intervals is not supported by the record. Examination findings showed full strength in the left extremities, and only slight diminished strength in the right lower extremity. The claimant also had only mild limitation of range of motion in the right shoulder (13F). The claimant was diagnosed with neuropathy in both feet, and had deformity in the form of a bunion of the right foot with imaging studies (14F/3-5). However, treatment was limited and Dr. Goswami noted on October 29, 2015, that pain was localized to the right knee. He refused an EMG study, but the claimant was fitted for orthotics (17F/5). Regardless, his description of the claimant's pain and the refusal to refer the claimant for further testing is evidence of the degree of symptoms he noticed. Indeed, physical examination findings continued to show limitations with pain and some range of motion despite physical therapy (18F/35-36), but no findings suggested durational limitations in ambulation, and especially no need to lie down. While the claimant had osteoarthritis in the right shoulder, the record also lacked findings related to limitations in grasping, manipulation or sensation in the upper extremities. While the undersigned accounted for limitations in the use of the right upper extremity, no findings support manipulative limitations (13F and 20F/12). Finally, the opinion that the claimant would be absent from work three days per month was not

13

> supported by the treatment records and the record lacked treatment modalities such as frequent hospitalizations or notes regarding reported period of incapacitation, which would support this limitation. Therefore, while the overall exertional limitation is consistent with the record, and the record supports both postural and environmental limitations, the treatment records are not consistent with the degree of limitation opined by Dr. Goswami.

(Tr. 566-67.)

As reproduced above, even though Dr. Goswami was Ms. Jones' treating physician, and his opinion was thus eligible for controlling weight, the ALJ found that some of the limitations Dr. Goswami opined (*i.e.*, the limitations in standing, walking, changing position, and lying down) was not supported by the evidence in the record. (Tr. 566; *see* Tr. 403-04.) Specifically, the ALJ observed that physical examination notes revealed that Ms. Jones only had slight strength limitation in her right lower extremity, yet she had full strength in her left extremities. (Tr. 566; *see* Tr. 385.) Dr. Goswami notably declined to send Ms. Jones for an EMG because her pain was centralized in her right knee. (Tr. 566; *see* Tr. 461.) These findings are inconsistent with—and none of Dr. Goswami's treatment notes or those of any other source explain—Dr. Goswami's opinion that Ms. Jones could only stand/walk a few minutes at a time. (Tr. 403.) In addition, although there are physical therapy records indicating Ms. Jones had pain and some limitation in range of motion, these records do not demonstrate how—nor does Ms. Jones explain why—she would have an extreme limitation in her ability to stand/walk or a necessity for lying down. (Tr. 566; *see* Tr. 525, 567.)

Furthermore, the ALJ also correctly observed inconsistencies with Dr. Goswami's opinions regarding Ms. Jones' limitations in grasping, manipulation, or sensation in her upper extremities. As the ALJ acknowledged, Ms. Jones has osteoarthritis in her right shoulder but the "record also lacked findings related to limitations in grasping, manipulation or sensation in the upper extremities." (Tr. 567.) Significantly, Dr. Koepke did not observe that Ms. Jones had any difficulty

14

in using her hands during the consultative examination. (Tr. 567; *see* Tr. 385, 388.) Nor did the emergency room providers observe that Ms. Jones had difficulty using her hands upon examination. (Tr. 567; *see* Tr. 959.) Indeed, the ALJ cited the November 2016 emergency room report, which indicated that Ms. Jones had normal upper extremities. (Tr. 959.) Thus, the ALJ agreed that Ms. Jones had some limitations, but assigned no weight to Dr. Goswami's opinions regarding Ms. Jones' ability to stand/walk, need to lie down during the day, and unscheduled breaks because they were not supported by the evidence in the record. (Tr. 566.)

The substantial evidence standard asks whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). As the Sixth Circuit stated, under this standard, a reviewing court is concerned with whether the ALJ asked "the right questions and provided reasonable answers," not on whether the court would have given the same answers at the ALJ. *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016). If the ALJ cites substantial, legitimate evidence supporting her factual conclusion, the reviewing must affirm the ALJ's decision. *See Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 667 (6th Cir. 2009) (citing *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

Here, Ms. Jones asserts her frequent visits to Dr. Goswami during the relevant period means that the Dr. Goswami was in the "best position" to understand her limitations and render an opinion. (ECF No. 6, PageID#1060.) She also asserts that Dr. Goswami was aware of the MRI scans of her neck. (*Id.*) She further argues that it was "duplicitous" for the ALJ to rely on Dr. Koepke's findings when the ALJ did not afford any weight to Dr. Koepke's opinion. (*Id.* (citing Tr. 566.)) For the following reasons, Ms. Jones' arguments fail..

15

To the extent that Ms. Jones implicitly invites this Court to reweigh the evidence by reciting the same evidence the ALJ considered, this is an impermissible request. *See Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 440 (6th Cir. 2017) ("The fact that there is some evidence in the medical records to support [a treating source's] conclusion is not enough to overturn the agency. 'The fact that a record may also possess substantial evidence to support a different conclusion than that reached by the ALJ or that a reviewing judge might have decided the case differently is irrelevant.'") (citations omitted). In addition, the ALJ weighed the evidence and demonstrated why Dr. Goswami's opinions were unsupported and inconsistent with the other evidence in the record. It is appropriate for an ALJ to reject an opinion (even that of a treating source) that is unsupported by and inconsistent with other evidence. *See* 20 C.F.R. § 404.1527(c)(ii)(3)-(4). The ALJ discussed the MRI neck imaging Ms. Jones cites, but notably Dr. Goswami did not cite this scan in support of his opinion. (Tr. 402-03, 478, 562-63.) Furthermore, Ms. Jones fails explain *why* these scans support Dr. Goswami's opinion. (*See* ECF No. 6, PageID#1060 ("Furthermore, Dr. Goswami was well aware of the nature and severity of Plaintiff's cervical spine impairments, as results of the MRI are included in his records.")).

Ms. Jones also does not demonstrate that the ALJ was "duplicitous" in citing to Dr. Koepke's clinical findings. (ECF No. 6, PageID#1060.) The ALJ relied on Dr. Koepke's clinical examination findings, *not* Dr. Koepke's medical opinion. (*See* Tr. 567.) Specifically, as discussed above, the ALJ observed that, when Dr. Koepke examined Ms. Jones, Dr. Koepke did not observe any manipulation restrictions, which directly contradicts Dr. Goswami's opinion regarding restrictions in Ms. Jones' upper extremity. (Tr. 567; *see* Tr. 385, 388.) The ALJ also pointed out that Dr. Goswami's upper extremity findings were not consistent with later emergency room records that demonstrated *no* problems in Ms. Jones' upper extremities. (Tr. 567; *see* Tr. 959.) The

ALJ's cited evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Notably, the ALJ did not assign full weight to Dr. Koepke's opinion because she determined that Ms. Jones was *more limited* than Dr. Koepke had concluded. (Tr. 565; *see* Tr. 387.) As the Commissioner contends (ECF No. 7, PageID#1069), the ALJ's decision to assign little weight to Dr. Koepke's opinion demonstrates "even-handed evaluation" of the relevant evidence to formulate the RFC, not duplicitousness. *See, e.g.*, *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (finding plaintiff more limited than the prior administrative medical findings showed "even-handed evaluation").

In sum, Ms. Jones challenges the weight assigned to Dr. Goswami's opinion primarily based on Dr. Goswami's treating source status, but the ALJ sufficiently explained why she afforded no controlling weight to that opinion. Ms. Jones also fails to directly address the ALJ's reasons or demonstrate error. (ECF No. 6, PageID#1060.) Thus, I find "good reasons," *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009), and substantial evidence, *see* 42 U.S.C. § 405(g), support the ALJ's weighing of Dr. Goswami's opinion. Accordingly, I recommend that the Court reject this assignment of error because it lacks merit.

## VI. RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the Commissioner's final decision.

Dated: April 10, 2024             */s Jennifer Dowdell Armstrong*
                                  Jennifer Dowdell Armstrong
                                  U.S. Magistrate Judge

## VII. NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within**

17

**fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).